(112 So. 903)

**KIMBRELL v. SIMPSON et al. (6 Div. 827.)**

Supreme Court of Alabama. April 14, 1927.

Rehearing Denied June 2, 1927.

**1. Appeal and error ⬤⟳374(1)—Appeal from decree foreclosing mortgage on wife's realty held clearly within statute authorizing appeal by married woman without giving security for costs (Code 1923, § 6138).**

Appeal from decree foreclosing mortgage on wife's real property given to secure debt of husband *held* clearly within Code 1923, §,6138, authorizing married woman to appeal without giving security for costs.

**2. Appeal and error ⬤⟳374(1)—Married woman's affidavit in lieu of security for costs on appeal held sufficient under statute (Code 1923, § 6138).**

Affidavit in lieu of security for costs made by married woman appealing from decree foreclosing mortgage on her property given to secure debt of her husband *held* sufficient under Code 1923, § 6138.

**3. Husband and wife ⬤⟳171(4)—Evidence held to show that mortgage of wife's realty was given to secure loan to husband.**

Evidence *held* to show that mortgage of wife's realty was in fact given to secure loan to husband for use as part payment in purchase of other property.

Appeal from Circuit Court, Fayette County; R. L. Blanton, Judge.

Bill by Myrtie Kimbrell against S. H. Simpson and Harry Kimbrell to cancel a mortgage executed by complainant and Harry Kimbrell to Simpson, and cross-bill by Simpson to ascertain the amount due upon said mortgage and for a decree of foreclosure. From a decree denying relief under the original bill and granting relief under the cross-bill, complainant appeals. Reversed and rendered.

The affidavit of appellant in lieu of security for costs is as follows:

"State of Alabama, Fayette County.

"Before me, R. F. Peters, register of the circuit court in and for said county and state, personally appeared Myrtie Kimbrell, who, being duly sworn, upon her oath says that she is the complainant in the case of Myrtie Kimbrell, Complainant, v. S. H. Simpson and Harry Kimbrell, Respondents, in the circuit court in equity in said county; that she is one of the defendants in the cross-bill in said case; that there was a decree rendered in the circuit court in equity in said case against her on the 15th day of May, 1926, by Hon. R. L. Blanton, judge of the Fourteenth judicial circuit in equity; that under said decree her land, which is her separate estate, is to be sold by the register; that said decree is a final decree, and one from which an appeal lies to the Supreme Court of Alabama; that she is unable to give security; that she is unable to give security for the costs of an appeal; that she is entitled to an appeal to the Supreme Court to revise said judgment or decree without giving security for costs; that she is a married woman, the wife of Harry Kimbrell; and that she prays an appeal from the decree in said case subjecting her property and separate estate to sale; and that the separate estate and her separate estate consists of lands. Myrtie Kimbrell.

"Sworn to and subscribed before me this the 25th day of May, 1926. R. F. Peters, Register of the Circuit Court, in Equity."

W. S. McNeil, of Fayette, for appellant.

The mortgage here was given to secure husband's debt, and is void. Vinegar Bend Lbr. Co. v. Leftwich, 197 Ala. 352, 72 So. 538; People's Bank v. Steinhart, 186 Ala. 205, 65 So. 60; 21 Cyc. 1464, 1481; Field v. Campbell, 164 Ind. 389, 72 N. E. 260, 108 Am. St. Rep. 301; Smith v. D. Rothschild & Co., 212 Ala. 276, 102 So. 206; Morriss v. O'Connor, 206 Ala. 542, 90 So. 304; 21 Cyc. 1313; Lamkin v. Lovell, 176 Ala. 334, 58 So. 258; Elkins v. Bank, 180 Ala. 18, 60 So. 96; Corinth B. & T. v. King, 182 Ala. 403, 62 So. 704; Thompson v. Hudgins, 116 Ala. 93, 22 So. 632.

S. T. Wright, of Fayette, for appellees.

The affidavit is insufficient. Code 1923, § 6138. There was no existing indebtedness due by appellant's husband to appellee, and there was no impediment to appellant's borrowing money from appellee and paying her husband's debt. Adams v. Davidson, 192 Ala. 200, 68 So. 267; Mohr v. Griffin, 137 Ala. 456, 34 So. 378; Hall v. Gordon, 189 Ala. 301, 66 So. 493; Hall v. Bank of Florala, 213 Ala. 395, 104 So. 791; Sample v. Guyer, 143 Ala. 613, 42 So. 106; Van Derslice v. Merchants' Bank, 213 Ala. 237, 104 So. 663; Bell v. Farmers' Bank, 214 Ala. 211, 106 So. 851. The burden was upon appellant to show the fact of suretyship. Gibson v. Wallace, 147 Ala. 322, 41 So. 960; Gafford v. Speaker, 125 Ala. 498, 27 So. 1003; Griffin v. Dawsey, 196 Ala. 218, 72 So. 32.

BROWN, J. [1, 2] The decree from which this appeal is prosecuted is clearly within the statute authorizing a married woman to appeal without giving security for costs of the appeal, and the affidavit complies with the provision of the statute. Code of 1923, § 6138.

The certificate of the register of the circuit court appended to the transcript is dated November 15, 1926. The record was filed with

the clerk of this court on November 22, 1926, and the cause submitted on the motion to dismiss the appeal and on the merits on December 2, 1926. We are not of the opinion that the appeal should be dismissed, and the motion is overruled.

[3] The sole question in this case is one of fact—whether or not the debt secured by the note and mortgage executed by the complainant and her husband to the appellee, S. H. Simpson, was the debt of the husband.

The evidence shows, without dispute, that the defendant Simpson is the brother of the complainant, and that they are two of the eleven heirs at law of W. T. Simpson, deceased, whose death occurred in March, 1917; that the property involved in this suit is the complainant's share of the estate allotted to her on a division by agreement between the heirs. In the first division of the estate certain of the lands, including what is referred to as the "Jackson estate," embracing the lands in controversy, were allotted to complainant, Uriah Simpson, and the defendant S. H. Simpson.

These three subsequently agreed on a division between themselves, and, after the deeds had been executed to the two brothers, S. H. and Uriah Simpson, S. H. refused to sign the deed to complainant. The testimony of the complainant, her husband, and Uriah goes to show that this refusal of S. H. to sign was because the husband of complainant had expressed a desire to sell complainant's interest, worth $2,000, and appraised at $1,375, to S. H. for $1,000, to which complainant would not agree. The respondent S. H. was not able to state his reason for refusing to sign the deed, but admits that he was willing to accept the property from his sister and pay her $1,000 for it.

The signature of the complainant appears first on both the note and mortgage, with that of the husband taking the second place, and the mortgage recites "that for and in consideration of our indebtedness to S. H. Simpson in the just sum of one thousand and eighty and no/100 dollars, which is evidenced by our promissory waiver note, bearing date the 4th day of October, 1919, and falling due on the 15th day of November, 1920, we do hereby grant," etc., and, in addition to complainant's land, covers "one bay horse named Henry Glover, age eight years, weighing 1,218 pounds."

The evidence is without dispute that the note and mortgage was given for money loaned, and was paid by check issued by the respondent Simpson on the bank of Berry, Ala., to Ida Clark in payment of the purchase money of a tract of land sold and conveyed by Mrs. Clark to the husband of the complainant, purchased by the husband to be used as a place of residence.

The testimony of the complainant and her husband is to the effect that this loan was negotiated by the husband, without the complainant's knowledge, and is the debt of the husband; and that the complainant refused to agree to sign the papers until she was informed by her husband, Kimbrell, that he would forfeit his horse and buggy which he had pledged for earnest money, put up to show good faith in making the purchase. During the examination of Kimbrell, the husband of complainant, he stated that, when he applied to Simpson for the loan, Simpson said, "I'll let you have a $1,000 if Myrtie (the complainant) will agree to sign the papers first."

The testimony of the complainant is corroborated by extrajudicial declaration of the respondent Simpson, made to different parties after the consummation of the loan. Lester Jackson testified, in substance, that respondent stated to him in the fall of 1924 "that Harry (complainant's husband) would not make the deed to him at first to his wife's land, but I got it at last. I loaned Harry $1,000, and took his wife's land for surety in order to get it, and Myrtie signed it, and, 'by jolly,' if you don't believe it, I will show you the papers." And to Dr. Fent Jackson, in July or August, 1923, according to the witness Bill Jackson, defendant stated, in effect, "After showing him a view of Myrtie Kimbrell's land, that he managed to get a mortgage on the land for $1,000, and I own the whole Jackson estate or will in a little while, old Harry will never pay it."

The witness Hudson testified that Simpson stated to him that he (Simpson) loaned "Harry (complainant's husband) $1,000, and expected to have trouble with him."

The testimony of the respondent is that the loan of the money was made to the complainant and not to her husband; that she came to his home a week or two before the matter was closed, and told him that she would buy the place from Mrs. Clark if he would let her have $1,000, and he told her that he would if she would secure it with her land, and that she agreed to do so. While this testimony is positively denied by the complainant, it is to some extent corroborated by Uriah Simpson and the respondent's wife, but they all agree that the arrangement was merely tentative, and Uriah's testimony was that no amount was mentioned.

Respondent, on the other hand, testified that he had no recollection of complainant's husband ever approaching him to borrow the money, and could not recollect any specific occasion when anything further was said to him by the complainant about the loan.

When called on to deny the statements testified to by the Jackson, he neither affirmed or denied them, and, when asked this question by his counsel, "Now in regard to this conversation that Mr. McNeil has referred to, did you ever say that you'd loaned money to Myrtie Kimbrell or to Harry Kimbrell?" he answered, "I wouldn't say positively which I loaned it to."

In Van Derslice v. Bank, 213 Ala. 237, 104 So. 663, cited by the appellees, the money was borrowed by the wife from the bank, and it was entered to her credit on the books of the bank, and afterwards paid out by checks drawn by her to the husband's creditors.

In Griffin v. Dawsey, 196 Ala. 218, 72 So. 32, "it is without dispute that the money borrowed was paid to the wife, or, to be exact, that the draft or check was made payable to her, and that it was endorsed by her to the bank which paid the money."

In Bell v. Farmers' National Bank of Opelika, 214 Ala. 211, 106 So. 851, the money was loaned to the wife by the bank on her written application, and she gave her individual note to the bank, with a mortgage on real estate. The money was entered to her credit, and she gave a check on this account to her husband, who used the money, not to pay debts previously contracted, but to operate his cotton business.

The other cases cited by the appellees are no more applicable here than the foregoing.

In this case the wife did not receive the money nor the check, which was made payable direct to, and delivered to, Mrs. Clark, to pay part of the purchase money for lands deeded to the husband, and, after careful consideration of the evidence in this record, we are of opinion that it clearly shows that the money was loaned by the appellee Simpson to the husband, Harry Kimbrell, and that the mortgage was given to secure his debt.

The decree of the circuit court is reversed, and one here rendered granting to the appellant the relief prayed in her bill.

Reversed and rendered.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.